Next, we have N. Ray Linett, Bernard Hanson appearing for Appellant, Kellyanne Trant appearing for Appley, Thomas Hebrink, Trustee, Michael Cook appearing for Appley's Julie M. Garwood Law Office, etc. Okay, good morning to me, afternoon to all of you. Mr. Hanson, do you want to reserve some time for rebuttal? Yes, Your Honor, five minutes plus any part of the unused ten minutes. Got it, okay. Go ahead, and I'd like you to, there is an issue in this case which I think wasn't brief that has to do with our jurisdiction, specifically standings. Maybe I should start off with the questions that I have on that point for you. For early American history auctions, it looks like that entity did file a proof of claim but subsequently transferred the claim to another person, also named Linett. I don't see how early American history auctions still has standing, because it doesn't seem like it has any claim left against the estate. And let me give you the second standing question, too, so you can answer them both. Your view is that the estate is administratively insolvent. There's not even enough money to pay administrative expenses. If that's the case, then there's not going to be any money flowing to your client, the debtor. So how does the debtor have standing? So that's my two-part standing question. Please go ahead. Of course, Your Honor. May it please the Court. I'm glad the Court saved the best case to last. In direct response, it is because each of them are aggrieved buyers. You don't have to have a claim in a bankruptcy case if you go to buy something and the Court says, no, you're not the successful buyer. An aggrieved buyer is a party in interest. You can have a party in interest who's not a creditor. I understand your response. And as to early American history auctions, it falls in that category. They made, I believe, a joint objection and joint bid. What happened, oh, excuse me with the claim numbers. Claim number four was transferred by Mr. Lynette's sister to early American, and then early American transferred it back. Early American's standing is not based upon being a creditor, as mentioned above. My argument addresses four issues. Can the rationale of Mickey Thompson be expanded to cover the facts of this case? Two, did the plan or trust agreement bar the bankruptcy court from applying Mickey Thompson? Three, at the time of the motion, was the trust estate administratively solvent? Four, what's the appropriate remedy? Much of the original breeze, I think, pivoted on Mickey Thompson. And appellant's argument, I think, is relatively straightforward. Mickey Thompson said it was a sale because the release of mutual claims is illusory. One side didn't have claims. You release only. If only one side has claims, the other doesn't, it's not a mutual release. There's no value exchange. Here, the argument is no value is exchanged by the release of a claim because the estate is administratively solvent. And I think it's the same rationale, your honors. No value given. The withdrawal of a claim does not benefit the estate. I don't see any reason Mickey Thompson, that rationale should not be applied to the facts in this case. I did notice the trust agreement. Well, one question I have is, does this ANC properties or Mickey Thompson apply at all, given that we're really not applying Rule 9019, we're really looking at a trust agreement? And let me give you another two-part, two-part question. That's where I forget my second part. The other part is that the trust agreement specifically requires overbidding for sales of real property, but it doesn't require overbidding for sales of personal property. Does that suggest that overbidding should not be required under a Mickey Thompson sort of rationale when it comes to personal property? In response to your two-part question, I have a five-part answer. Okay. So, first, I think what you need to start with, and let me get it, is it's Appendix Exhibit X, which is the amended tentative ruling issued by Judge Mann. And on page four, here is her reasoning. Absent an express standard provided for in the plan or trust agreement, the court may consider the fair and equitable standard from ANC for evaluating the Garwood settlement. So, the lower court held that I can look at ANC and implicitly held, and I think correctly so, that there's no other express standard in the plan or trust agreement. And so, I, and there's no reason that the court or that this panel should not also say, absent an express standard provided for in the plan or trust, the court may consider the rationale of Mickey Thompson. It's the same argument, and there's a case site there of brief, G-R-E-I-F and Company versus Shapiro. So, that's point number one. Point number two is the trustee based his motion on ANC properties. So, and the trustee did not cite state law. All the moving papers are based upon bankruptcy law. And I think it would be unfair for the trustee to try to get court approval based upon bankruptcy law. And then say, oh, but you don't get to argue bankruptcy law. I'm the only one who gets to argue bankruptcy law here. Number three, the, this idea of, no. I think the fact that the bankruptcy court approval was required kind of implies that the court, you know, I see, not only did the plan and did the trust agreement require court approval, it required court approval of just about everything. And I think we all know court approvals of sales and settlements are handled hundreds of times each day across this nation. And everyone applies pretty much, well, certainly the Ninth Circuit applies the same cases. That's the way it's done. There's nothing in the plan or the trust agreement to say, no, we're going to have this completely different way of doing it. We're just, let's just ignore bankruptcy law. The other thing that I believe you asked, and is this difference? Well, it wasn't, didn't the bankruptcy court really only have to look at the sole reasonable business discretion? Isn't that all that comes into play? Let me respond to that in two ways. First of all, the bankruptcy court to reach that conclusion explicitly rejected section 6.3.1. It's right in the trust agreement. It's directly the trustees powers about, let me see, I lost it. But it is the, I lost, oh, it's the 6.3.1 cannot sell for less than fair and adequate value. So it's not just the trustees discretion. It's the trustees discretion to get the reasonable fair and adequate value. I would suggest that there's really nothing, there's no difference between fair and adequate value and the test under A and C properties. That's what the bankruptcy court is trying to do in A and C properties. It's fair and adequate consideration for the asset. And so I, that there are, excuse me counsel, if what the bankruptcy judge, whether or not the bankruptcy judge should have applied A and C and says it's controlling, isn't the same thing if the judge applied those factors appropriately, isn't that actually more strict than what they would have had to do? Oh, let's see, the argument, the appellant's argument is not that the compromise settlement should not have been approved. And that's, let me see, if a trustee brings a settlement before the bankruptcy court and has any sort of glimmer of reasonableness to it, the bankruptcy court's going to approve it. You don't defeat a bankruptcy trustee on a sale by saying it's not reasonable. How do you, how do you? Well, I think A and C, A and C is not, not a glimmer test. Okay, well, it shouldn't be. And I, you know, let me see. I apologize if I implied that judges treat it that way. That was not my intent to say judges don't do their jobs, because all the bankruptcy judges I've met and heard before, they do their job. As to, let me see, a couple more points. I'll point out just so you know, you're down to about four minutes left, so you're inside the time you wanted to reserve. It's up to you whether you want to continue or reserve, completely up to you. Okay, I'm going to make hopefully one more minute, because this is important. This sole discretion is an oxymoron. The sole discretion makes it sound like the trustee gets to decide whether he's reasonable. No, it's the court who decides whether the trustee is reasonable. And the, it is not reasonable for a trustee to say, okay, $75,000, $50,000,  under any standard, that's not reasonable. That's what the trustee did. I'll reserve my time. Thank you. Okay, thank you very much. All right, let's see. Ms. Tran, will you be going first, and how you agreed to divide up the time? I think, your honors, yes. Kellyanne Tran on behalf of Appellee Thomas Hebring, trustee. Yes, I will be going first. And Mr. Cook and I have generally agreed to split up, split our time in half. Okay. And so, I'll be mindful of that when I make my argument before the court. Great. Go ahead, please. Thank you, your honor. So, the issue on appeal, as raised by the appellant, is whether the bankruptcy court abused its discretion when it approved the compromise between the trustee and the Garwood defendants, what I will define as the Garwood defendants. The appellant argues that the court misapplied the law and abused its discretion when it did not approve the settlement as a sale, rather than a settlement and compromise. The terms of the settlement are, it resolved many pieces of disputes between the two parties. And it provided a cash payment from the Garwood defendants to the estate of $50,000. It resolved a pending pre-petition legal malpractice action that the debtor filed against the Garwood defendants, to which the Garwood defendants filed a cross-complaint for money due related to their legal representation in the debtor. It resolved a proof of claim, an unsecured proof of claim filed by the Garwood defendants in the amount of roughly $200,000. And it also resolved the pending objection to claim that the debtor filed. So, it's not purely like the appellant is phrasing that the trustee decided to take $50,000 as opposed to $75,000. The value of the settlement is more than just the cash amount. And that issue was, in fact, brought before Judge Mann and ruled on by Judge Mann when the debtor was arguing, I'm sorry, when the appellant was arguing that he should be entitled to pay $75,000. And Judge Mann, in analyzing these arguments, said, well, it's not just the $50,000 versus $75,000. It's the, does the appellant have the ability to pay the $200,000 that's being withdrawn? Does the, what about the saving of administrative expenses? And one of the challenges I see in this case is that Mr. Linnat's counsel did a really good job of laying out their position on administrative insolvency in quite a bit of detail. And he's got a table, you know, with figures in it. And he adds them all up and comes up with a number. The trustee's response was much more vague than that. And the trustee says he thinks maybe the case would be solvent if certain things happened, but he never really put numbers on that. How are we to deal with that difference in what seems to be precision? Well, Your Honor, I think in this case, what is the standard that the trustee is held to and that the bankruptcy court needs to apply? Under the trust agreement, the trustee is held to a reasonable business discretion. And in accepting the terms of the settlement offer, that was the thought process that was implied. Given the state of the litigation, the amount of costs that would be required to proceed, and really glaringly the likelihood of success in the state court action, that was thoroughly vetted by the trustee and his counsel about whether or not this would be an asset that would bring value to the estate. And it simply was not. Well, but that's kind of, that's, I mean, that's somewhat beside the point. I mean, the real question is, what were the value, if any, of the Garwood defendant's claims against the estate? It's clear that the debtor was offering more money than was offered in the settlement. The only question is, what's the value of the offsetting claims that get reduced, or released, I should say? So, the cash issue aside, the settlement reduced the amount of unsecured claims by $200,000 and saved a great deal in administrative expenses. But if Mr. Lynette had bought the claims, the estate would have incurred any more administrative expenses, right? That would have been all on Mr. Lynette as the buyer of the claims. The trustee would still have to litigate the objection to claim that the debtor filed. That was part of the resolution of the Garwood settlement agreement, was resolving the debtor's objection to the Garwood claim. Why would the trustee have to weigh in on that? The debtor can fight that if the debtor wants to. That was part of the, that was, those were part of the claims and assets that were transferred as part of the trust agreement. So, Your Honor, I understand, I think what the debtor is trying, I'm sorry, what the by going through this asset analysis, first of all, I mean, things have happened since that opposition was filed. Then the asset values have changed, you know, the, and that was, that was the trustee's response. At the time this Notice of Intended Action was approved, significant assets had not been administered, including the residence and personal property items of the business. The residence is pending sale for $840,000 more than the debtor estimated in his opposition. So, I think if you're looking at the standard that the trustee is required to abide by, it's his reasonable business discretion and whether or not this, the agreement was fair and equitable. And that was the appropriate legal analysis that was applied by Judge Mann. The appellant also argued that under Mickey Thompson, the court should view this settlement as a sale. And the court also gave weight to that argument and said, the difference in this settlement is there is a mutual release. This is not a single-sided release where there is value in that. There is value in eliminating claims against the estate and minimizing administrative expenses going forward. The trust requires that the trustee perform his duties and liquidate trust assets within five years of the effective date of the trust.  So, I think if the court, if the bankruptcy appellate panel should focus on whether or not the bankruptcy court abused its discretion by approving the Garwood Settlement Agreement. And based on Judge Mann's thorough tentative ruling and order, I believe that's, I think that's Exhibit O and Exhibit Q of the appendix. The bankruptcy court thoroughly analyzed how the trustee had satisfied his reasonable business discretion under the trust, which was adopted by the confirmed plan, and that the settlement was fair and equitable. And I will defer to Mr. Cook now, so I don't take up his time as well. MR. COOK. You're exactly halfway done, so very good. Mr. Cook, go ahead. MR. MICHAEL COOK. Good afternoon, Your Honors. Michael Cook. I represent Julia Garwood et al., referred to in the pleadings of the Garwood defendants and or the Garwood parties. This was not a Chapter 7. This was a Chapter 11. It was a plan, in fact, it was a plan proposed jointly by the debtor that would give the business discretion to an objective third party to liquidate the estate and or settle the claims. I do agree and want to emphasize that the litigation cost of the objection to claim of Julia Garwood within the bankruptcy would be an expense against the estate as it was not part and parcel, would not necessarily be part and parcel of a settlement or be subject to an overbid. I would also like to point out that the trust agreement itself only provided overbids as it applied to sale of the real estate because of the nature of the assets of the estate and particularly the numerous pieces of personal property that would be subject to liquidation. I do think or submit the standard is the trustee's business judgment because that's what the trust provided for. My clients relied on that, not objecting to the plan because we wanted an objective third party to liquidate the assets. The debtor had his own subjective standards in reviewing what those assets were worth, particularly as it applied to obviously the malpractice claim. But I think that the settlement was well within the discretion of the trustee. I think that we don't know, but the estate could very well be solvent at some point and by reducing the claim of the Garwood parties, it would increase the dividend to other allowed unsecured claims. So I welcome any questions, but I think that the judgment was clear. I don't believe she just abused any discretion and I think she was following specifically the terms of the trust. This was not a de facto Chapter 7. This was a Chapter 11 plan. Okay, thank you. Any questions for Mr. Cook or Ms. Tran? Okay, thank you very much. We'll go back to Mr. Hanson. There we are, three minutes, 11 seconds. Please go ahead. First of all, as to the savings to the estate, because it doesn't have to litigate the claim objection, that's a red herring. The idea that you're going to litigate a malpractice action in court, but you're going to have the counterclaim in another jurisdiction is ridiculous. Those two matters are going to be consolidated. They're going to have all the matters are going to be heard at the same time. There's not going to be a claim objection in bankruptcy court and affirmative relief sought in state court. So that, I think, is easily resolved. Now, it is interesting for people to say, well, it's reasonable because that's what my client bargained for. Well, my client specifically bargained for and requested that the language of 6.3.1, not for less than fair and adequate consideration, be inserted in the documents. So I simply don't understand why the appellees don't address that. They just keep saying reasonable, and I have concluded more than once in the reply brief, it's the reasonable person obtaining not less than fair and adequate consideration in a reasonable manner. The other thing, let me see, they're talking, well, did the trust agreement require overbids? Well, you know, it required overbids in just this one situation. So does that bar it? No, it doesn't. As a practical matter, every single other matter in the estate has been sold by overbid auction. All the personal effects, all the money, all the artifacts, they've all gone by overbid auction. So this idea that things can't be sold by overbid auction or shouldn't be sold by overbid auction is belied by the trustee's actual actions. The, let me see, does the fact that the court may use an overbid auction mean that the court abused its discretion by not doing that in this instance? Yes, because the court was required under the trust agreement to get a not less than fair and adequate consideration. Not having an overbid auction in this case resulted in that attempt just by the $50,000 versus $75,000 measure. And that there is no counter, it is an administratively insolvent estate as proved by the evidence submitted to the trial court. Thank you. Okay. Thank you very much. Your time is exhausted. The matter is submitted. I appreciate your arguments. Thank you. Thank you, your honors. And that's our last case set for argument. So we'll be in recess.
judges: Faris, Brand, Corbit